## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHEN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **IN RE:** | ) | **CHAPTER 11** |
| | ) | |
| | ) | |
| **AKRON THERMAL, LIMITED** | ) | |
| **PARTNERSHIP,** | ) | **Case No. 07-51884** |
| | ) | |
| **Debtor** | ) | |
| | ) | **BANKRUPTCY JUDGE:** |
| | ) | **MARILYN SHEA-STONUM** |

## <u>MOTION AND MEMORANDUM FOR LEAVE TO APPEAL</u>

Now comes the City of Akron ("City") and pursuant to Bankruptcy Rule 8003,

respectfully request leave to appeal from the Bankruptcy Court's Partial Opinion on Motion of

Debtor And Debtor-In-Possession for Approval of Assumption of the Unexpired Operating

Lease Agreement with the City of Akron dated April 25, 2008 (the "4.25.08 Partial Opinion).

Consistent with Rule 8003, the City has attached a Memorandum which is by reference

incorporated herein, which contains the following:

1. A statement of the relevant facts and the questions presented by the appeal;

2. A statement of questions presented by the appeal and of the relief sought; and

3. A statement of the reasons why the appeal should be granted.

Additionally, consistent with Bankruptcy Rule 8003, the City has attached a copy of the

4.25.08 Partial Opinion which is denominated as Exhibit "A". The City respectfully request that

after a review of the attached Memorandum, the District Court grant leave for the City  to appeal

the 4.25.08 Partial Opinion to the U.S. District Court for the Northern District of Ohio.

Respectfully submitted,

SKIDMORE & ASSOCIATES CO., LPA

/s/ Eric E. Skidmore
Eric E. Skidmore (#0042310)
Brian K. Skidmore (#12833)
Archie W. Skidmore (#5037)
Attorneys for the City of Akron
One Cascade Plaza, 12th Floor
Akron, Ohio 44308
Phone:  330/253-1550
Fax:  330/253-9657
ees@skidmorelaw.com
bks@skidmorelaw.com
aws@skidmorelaw.com

**MEMORANDUM IN SUPPORT OF THE MOTION OF THE CITY OF AKRON FOR LEAVE TO APPEAL BANKRUPTCY COURT'S PARTIAL OPINION ON MOTION OF DEBTOR AND DEBTOR-IN-POSSESSION FOR APPROVAL OF ASSUMPTION OF THE UNEXPIRED OPERATING LEASE AGREEMENT WITH THE CITY OF AKRON DATED APRIL 25, 2008**

Dated:  May 5, 2008                          SKIDMORE & ASSOCIATES CO., LPA

                                   By:     /s/ Eric E. Skidmore
                                           Eric E. Skidmore (#0042310)
                                           Brian K. Skidmore (#0012833)
                                           Archie W. Skidmore (#5037)
                                           One Cascade Plaza – 12th Floor
                                           Akron, OH   44308-1136
                                           Telephone:  330-253-1550
                                           Facsimile:  330-253-9657
                                           ees@skidmorelaw.com
                                           bks@skidmorelaw.com
                                           aws@skidmorelaw.com

                                           *Attorneys for City of Akron*

**TABLE OF CONTENTS**

I.  PRELIMINARY STATEMENT ........................................................................................ 1
II.  BACKROUND FACTS NECESSARY TO UNDERSTANDING OF THE
     QUESTIONS TO BE PRESENTED ON APPEAL ........................................................ 2
     A.  The City Owns the Steam Plant and Annex Steam Plant Leased to the
         Debtor ................................................................................................................ 2
     B.  The Lease Term was Due to Expire on August 15, 2007 ................................... 3
     C.  The Debtor was in Substantial Default of Lease Payments Owed to the
         City Under Section 3 of the Lease ..................................................................... 3
     D.  The Debtor was in Substantial Default of Franchise Fee Payments Owed to
         the City Under Section 3 of the Lease ............................................................... 4
     E.  The Debtor was in Substantial Default for the Failure to Assume all
         Liability for all Personal and Real Property Taxes Under Section 3
         of the Lease ........................................................................................................ 4
     F.  The Debtor was in Substantial Default of the Lease, Lease Amendments
         I and II for Failure to Credit or Return Prepaid Steam Amounts to the
         City .................................................................................................................... 5
     G.  Upon the Debtor's Default the City had the Right to Terminate the
         Lease .................................................................................................................. 6
     H.  The City Attempted To Terminate the Lease and Attempted to
         Reenter the Leased Property ............................................................................... 7
     I.  The Debtor Attempted to Renew and Extend the Lease Term
         When the Debtor was in Substantial Default ...................................................... 7
     J.  Post-Petition Matters Relating to the Lease……………………………......... 8
         (i) Lease Litigation ............................................................................................. 8
         (ii) Debtor Filed Its Assumption Motions ............................................................ 8
     K.  The City Filed An Objection To The Debtor's Assumption Motions
         Asserting, Among Other Things, The Debtor Failed To Extend The
         Lease Term……………………………………………………............ 8
     L.  The City Cited Internal Substantive Law of The State of Ohio
         That The Debtor's Belated Attempt To Exercise A Right To Extend
         The Lease Term Was Unenforceable And Void Because The
         Debtor Was In Substantial Default of The Lease ......... …………………………9
     M.  Evidentiary Hearings Were Convened Before The Bankruptcy Court
         On The Issues of Lease Termination And Extension On
         January 14 and 15, 2008 .................................................................................. 11
     N.  On January 31, 2008 The Bankruptcy Court Delivered An
         Oral Ruling Finding The Lease Had Not Been Terminated And
         Deferring The Extension Issue ......................................................................... 12
     O.  The Debtor Filed a Chapter 11 Plan on March 20, 2008 Identifying as a
         "Condition Precedent" the Entrance of a Bankruptcy Court Order Approving
         the Debtor's Assumption Motions and Determining that the Lease was
         Validly Extended ............................................................................................. 12
     P.  On April 25, 2008 The Bankruptcy Court Rendered A Partial
         Opinion Supporting The Debtor's Position That The Lease Term
         Had Been Extended Despite Being In Substantial Default................................. 13
III.  STATEMENT OF QUESTIONS AND RELIEF SOUGHT .......................................... 14
IV.  STANDARD FOR LEAVE TO APPEAL ................................................................... 15
V.  APPLICATION OF THE STANDARD FOR LEAVE TO APPEAL ........................... 26
VI.  CONCLUSION ......................................................................................................... 27

# TABLE OF AUTHORITIES

**Federal Cases**

*Adell v. John Richards Homes Buildg. Co.*, 439 F. 3d 248 (6th Cir. 2006)..................................... 20

*A.H. Robins Co. v. Piccinin*, 788 F. 2d 994 (4th Cir. 1986) ........................................... 17

*In re: A.P. Liquidating Co.*, 350 B.R. 752 (E. D. Mich., 2006)................................................ 16,17

*Baker & Getty Fin. Servs., Inc. v. Nat'l Union Fire Ins. Co.*, 954 F.. 2d
(6th Cir. 1992).......................................................................................................................... 17

*In re City of Memphis*, 293 F.. 3d 345 (6th Cir. 2002) ............................................... 16,17

*In re Cook United, Inc.,* 53 BR 342 (Bankr. N. D. Ohio 1985)...................................... 10,11

*In re Cottrell*, 876 F. 2 d 540 (6th Cir. 1989) ................................................................. 16

*In re Dow Corning*, 86 F 3d 482 (6th Cir 1996)...................................................... 16,17

*In re: Downs*, 103 F. 3d 472 (6th Cir. 1996) ................................................................. 20

*Enron Corp.*, 2003 WL 22327118 (S. D. N. Y., 2003)..................................... 15,17,18,20

*In re: Ionosphere Clubs, Inc.*, 1999 WL 717291 (S. D. N. Y., 1999) ........................... 20

*Lloyd's American Trust Funds Litig.,* 1997 WL 458739 (S.D.N.Y. 1997) ................... 20

*Mirant Americas Energy Marketing, L.P. v. The Official Committee of Unsecured
Creditors of Enron Corp.*, 2003 WL 22327118 (S. D. N. Y., 2003) ............................. 18

*Mishikin v. Ageloff*, 220 B. R. 784 (S. D. N. Y., 1998) ................................................ 16

*Orange Boat Sales*, 239 B.R. 471 (S. D. N. Y., 1999) .................................................. 16

*In re Revco D.S., Inc.*, 111 B. R. 626 (Bankr. N.D. Ohio (1989) ............................. 10,11

*In re Saco Local Development Corp.*, 711 F. 2d 441(1st Cir 1983).............................. 16

*In re: T. R. Acquisition Corp.*¸1997 WL 51500 (S. D. N. Y., 1997)) ........................... 20

*In re Urban Broadcasting re Olshan*, 356 F. 3d 1078 (9th Cir. 2002; F. 2d 1318
(7th Cir. 1991)............................................................................................................. 16

*Williams v. United States*, 215 B. R. 298 (D. R. I., 1997) ........................................... 16

*WCI Steel, Inc. v. Wilmington Trust Co.*, 338 BR 1, 8 (N.D.E.D. 2005)...................... 16

**State Cases**

*Behrman v. Barto*, 54 Cal. 131 (1880)........................................................................ 24

*Brown v Hoffman* 628 P 2d 617 (Colo. 1981) ........................................................... 24

*Darling Shop of Birmingham, Inc. v. Nelson Realty Co., Inc.*, 255
Ala. 586 (1951)............................................................................................................. 25

*Felder v. Hall Bros. Co.*, 151 Ark. 182 (1921)........................................................... 23

*Gadsden Bowling Center, Inc. v. Frank*, 249 Ala. 435, (1947)................................... 23

*Hindquarter Corp. v. Property Development Corp.*, 631 P.2d 923(1981) ..................... 9,21,22,23

*Horn v. LaPille*, 984 WL 6969 (Ohio App. 1 Dist. 1984) ............................................. 9

*Klepper v. Hoover,* 21 Cal. App. 2d 460 (5th Distr. 1971)........................................... 24

*Lutterloh v. Patterson*, 211 Ark. 814 (1947) .............................................................. 24

*Nork v. Pacific Coast Medical Enterprises, Inc.*, 73 Cal. App. 3d 410 (1977) ........................... 23

*Parham v. Glass Club Lake, Inc.*, 533 S. W. 2d 96 (Tex. 1976) .................................. 25

*Parry's Heirs v. Tobacco Ins. Co.*, 1871 WL 4609 (Superior Court Ohio 1871 .......................... 10

*In re: Pilch*, 2007 WL 1686308 (W.D. Mich., 2007) .................................................. 17

*Sanderson Farms, Inc. v. Gasbarro*, 2007 WL 3402539 (S. D. Ohio, 2007)............................. 17

*Toellner v. McGinnis*, 55 Wash. 430 (1909)............................................................... 22

*Treinish v. Northwest Bank Minn.*, N. A. 266 B. R. 651 (6th Cir. BAP 2001)............................. 20

*Urbanski v. Szelaszkiewicz*, 15 Ohio App. 4, (6th Dist. Lucas County 1921) ................................. 9

**Federal Statutes**

11 USC §365................................................................................................................ 1

28 USC §158(a)(3) ................................................................................................... 1,15,17

Pursuant to 28 USC §158(a) and Rules 8001, 8002 and 8003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the City of Akron ("City") respectfully submits this Memorandum of Law in support of its Motion for Leave to Appeal ("Motion for Leave") from the Partial Opinion on Motion of Debtor and Debtor-in-Possession for Approval of Assumption of the Unexpired Operating Lease Agreement with the City of Akron dated April 25, 2008 ("4.25.08 Partial Opinion") entered by the United States Bankruptcy Court for the Northern District of Ohio ("Bankruptcy Court"), which concluded that if the Supreme Court of Ohio were presented with the question whether to imply performance of lease provisions as a condition precedent to an extension of a lease term, the Supreme Court of Ohio would not do so. The 4.25.08 Partial Opinion is attached hereto as Exhibit "A". The Bankruptcy Court also disregarded internal substantive appellate law in the State of Ohio and a "governing law" provision within a lease in rendering its decision.

## I.     PRELIMINARY STATEMENT

1.      In this contested matter before the Bankruptcy Court, Akron Thermal, Limited Partnership, as Debtor and Debtor-in-Possession (collectively the "Debtor") filed a Motion for Approval of the Unexpired Operating Lease Agreement with the City of Akron ("Assumption Motions") under 11 USC §365 of the United States Bankruptcy Code (the "Code"). The City filed an Objection to the Debtor's Assumption Motions stating, among other things, that the Debtor failed to extend the Lease term as a result of being in substantial default of Lease provisions at the time the Debtor attempted to exercise an option for extension. The Debtor replied that no such provision is expressly stated in the Lease. The City argued that a condition precedent of lease compliance to the exercise of an option to extend the Lease term can be

implied.  The City further asserted that the Lease expired without an effective extension and,

therefore, was not property of the bankruptcy estate.

     2.     On two occasions (see ¶¶ 33, 35 below) the Bankruptcy Court acknowledged the

lack of controlling authority in the jurisprudence of the State of Ohio.  In its 4.25.08 Partial

Opinion, the Bankruptcy Court held that it believed, "if the Supreme Court of Ohio were

presented with the question whether Akron Thermal effectively extended the Lease…it would

resolve the issue in favor Akron Thermal".  4.25.08 Partial Opinion, p. 28.  The City believes

that it was error for the Bankruptcy Court to so conclude.

## II.     BACKGROUND FACTS NECESSARY TO AN UNDERSTANDING OF THE QUESTIONS TO BE PRESENTED ON APPEAL.

### A.     The City Owns the Steam Plant and Annex Steam Plant Leased to the Debtor.

     3.     The City is the fee simple owner of the real property and facility presently

occupied and operated by the Debtor consisting of two steam generating plants and a distribution

piping system for the sale and distribution of steam, hot water, and chilled water for heating and

cooling services.  The two-system generating plant consists of an incinerating steam system

located at 226 Opportunity Parkway, Akron, Ohio (the "Steam Plant") and steam system located

by the former B.F. Goodrich Rubber Plant (the "BFG Annex Steam Plant") on South Main

Street, Akron, Ohio.  The Steam Plant consists of three boilers denominated as Boiler No.1,

Boiler No.2 and Boiler No. 3.  The BFG Annex System Plant consists of two boilers

denominated as Boiler No.31 and Boiler No.32.  The Debtor leased the Steam Plant and the BFG

Annex Steam Plant from the City pursuant to the terms, conditions and provisions of an

Operating Lease Agreement executed on or about August 15, 1997 (the "Lease").  Pursuant to

Section 1 of the Lease, the City agreed to lease to the Debtor all the land, buildings, structures,

systems, fixtures, improvements, equipment, manholes and underground piping and all pertinent

rights, privileges and easements in favor of the City relating to the Steam Plant, and BFG Annex Steam Plant sometimes hereinafter collectively referred to as the "Leased Property".

**B.      The Lease Term was Due to Expire on August 15, 2007.**

4.      Section 2 of the Lease provides, "[t]he term (the "Term") of this Lease shall commence on the date of this Agreement (the "Lease Closing Date")".  The Lease Closing Date was August 15, 1997.  Section 2 of the Lease further provides that, "[t]he initial Term of this Lease shall be for ten (10) years commencing on the Lease Closing Date and Tenant shall have the right to renew and extend the initial term for one additional period of ten (10) years." Section 2 of the Lease additionally provides that, "[t]he Term shall end on the earlier to occur of (a) the Purchase Closing Date, or (b) the tenth anniversary [August 15, 2007] of the Lease Closing Date or in the event that the Tenant [Debtor] has elected to extend the Term for an additional ten (10) years, on the twentieth anniversary of the Lease Closing Date, unless earlier terminated pursuant to the provisions of this Lease".

**C.      The Debtor was in Substantial Default of Lease Payments Owed to the City Under Section 3 of the Lease.**

5.      Pursuant to Section 3 entitled, "Lease Payments", the Debtor, as Tenant, is to pay the City as Landlord, annual Lease Payments equal to $90,000.00 per year.  Section 3 of the Lease additionally requires the Debtor, as Tenant, to pay the Lease Payments by paying monthly installments pursuant to a "Standard Schedule of Payments" set forth in Schedule 3.1 attached to the Lease.  Schedule 3.1 of the Lease provides for an escalator whereby on the anniversary date beginning January 1, 1999, the base annual lease payment of $90,000.00 shall be adjusted by an increase in the Consumer Price Index, requiring the Debtor to make monthly payments for each successive year in accordance with the percentage of payment in Schedule 3.1 of the Lease.

3

6.      According to Section 3 of the Lease, the Debtor was to make the monthly Lease payments on the last day of each and every calendar month.  The Debtor did not made all Lease Payments under Section 3 and <u>Schedule 3.1</u> of the Lease, and therefore the Debtor was in material and substantial default and breach therein. The Debtor was in default of the Lease Payments in an amount not less than $996,236.00 as of June 18, 2007.

**D.      The Debtor was in Substantial Default of Franchise Fee Payments Owed to the City Under Section 3 of the Lease.**

7.      Pursuant to Section 3, Subsection 3.2 of the Lease, the Debtor, as Tenant, was required to pay the City as Landlord, and to assume all liability for additional items constituting "additional rent" during the Lease Term.   Pursuant to Section 3, Subsection 3.2(a) of the Lease, the Debtor, as Tenant, was to pay additional rent to the City as Landlord, an annual sum constituting a franchise fee in accordance with a franchise ordinance passed by the City's council (ORD No. 670-1996) attached as <u>Exhibit "A"</u> to the Lease.  Section 3, Subsection 3.2(a) of the Lease provides that the Debtor, as Tenant, was to make the annual franchise fee payment to the City as Landlord, within (thirty) 30 days after the close of each calendar year.

8.      The Debtor failed to make all additional rent payment in the form of an annual franchise fee (Base Fee and/or Adjusted Base Fee)  constituting a material and substantial default under Section 3, Subsection 3.2(a) of the Lease and the attached <u>Exhibit A</u>.  The amount of additional rent owed by Debtor to the City in the form of annual franchise fees was $93,035.37 as of June 18,2007.

**E.      The Debtor was in Substantial Default for the Failure to Assume all Liability for all Personal and Real Property Taxes Under Section 3 of the Lease.**

9.      Pursuant to Section 3, Subsection 3.2(b) of the Lease, the Debtor, as Tenant, was to assume all liability for the payment of "additional rent" during the Term "…all property taxes

and assessments attributable to the Lease Property during the Term…[and] the Tenant [Debtor] shall be responsible for all government filings with respect to property taxes relating to the Leased Property….”

10.     The Debtor was in default of Section 3, Subsection 3.2(b) of the Lease because the Debtor has not paid (as additional rent) all property taxes and assessments attributable to the Leased Property because of delinquent personal property taxes owed the Summit County Fiscal Officer in the total amount of $269,073.90.

11.     The Debtor owed the City for real property taxes due (as additional rent) for the Leased Property (Steam Plant, parcel no. 6716765) for the first and second halves of 2006 in an amount not less than $65,396.52.  The City paid the real property taxes for the Steam Plant (parcel no. 6716765) in March and July 2007, respectively.   The Debtor owed the City for real property taxes due (as additional rent) for the Leased Property (BFG Annex Steam Plant, parcel no. 6756875) for the first and second halves of 2006 in an amount not less than $7,582.58.  The City paid the real property taxes for the BFG Annex Steam Plant (parcel no. 6756875) in March and July 2007, respectively.

**F.     The Debtor was in Substantial Default of the Lease, Lease Amendments I and II for Failure to Credit or Return Prepaid Steam Amounts to the City.**

12.     The Lease was amended on May 13, 1998 consisting of an “Amendatory Agreement”, hereinafter referred to as the “Lease Amendment I”.  Lease Amendment I provided that the City prepay for its steam usage in an amount of $357,716.04.  The City has not used, nor has the prepaid steam amount of $357,716.04 been returned to the City constituting a default under the Lease and Lease Amendment I.

13.     The Lease was additionally amended on April 1, 2005 consisting of an “Amendatory Agreement”, hereinafter referred to as the “Lease Amendment II”.  Lease

5

Amendment II provided that the City prepay for its steam usage an additional amount of $200,000.00.  The City has not used, nor has the prepaid steam amount of $200,000.00 been returned to the City.  The Debtor's failure to return the prepaid steam amount of $200,000.00 to the City, constituted a default under the Lease and Lease Amendment II.

**G.**     **Upon the Debtor's Default the City had the Right to Terminate the Lease and Reenter the Leased Property Without Notice to Debtor.**

14.     Section 19, Subsection 19.1 entitled, "<u>Termination</u>" provides that, "…this Lease may be terminated prior to the expiration of the Term as follows…(d) by Landlord pursuant to Section 13.2...."  Section 13.1 provides:

> "The occurrence of any of the following shall constitute an event of default (an "Event of Default") by Tenant under this Lease:
>
> (a)     the failure of Tenant to pay any lease payments or any other amounts payable by Tenant…and such failure shall continue for 30 days after the same become due and payable…."

Section 13.2 provides, "[u]pon the occurrence of an Event of Default, Landlord shall have the right, without further notice to Tenant, to terminate this Lease and reenter and repossess the Leased Property…."

15.     The Debtor committed numerous Events of Default including failure to pay Lease Payments and those items designated as "additional rent" under Section 3.1 and 3.2 of the Lease.  Pursuant to Section 13.1(a) of the Lease, the Debtor failed to pay "other amounts payable" constituting Events of Default.  The Debtor's Events of Default far exceeded 30 days after the amounts became due.  Under Section 13.2 the City, as Landlord, had the right to terminate the Lease and repossess the Leased Property without notice to the Debtor.

**H.**    **The City Attempted To Terminate the Lease and Attempted to Reenter the Leased Property.**

16.    According to Section 13, Subsection 13.2 and Section 19 of the Lease, on June 13, 2007, the City by and through its Director of Public Services ("Service Director"), hand delivered a letter to Debtor dated June 13, 2007.  The letter dated June 13, 2007 is hereinafter referred to as the "6.13.07 Letter".

17.    Section 13.2 of the Lease provides the City with the right to terminate the Lease "[u]pon the  occurrence of an Event of Default.…"

18.    According to the 6.13.07 Letter, the City by and through its Service Director, notified the Debtor of the occurrence of Events of Default.  The 6.13.07 Letter was an attempt by the City to re-enter and repossess the Leased Property.  According to the 6.13.07 Letter, the effective date in which the Debtor was to leave the Leased Property, was Tuesday, June 19, 2007 at 9:00 a.m.

**I.**    **The Debtor Attempted to Renew and Extend the Lease Term When The  Debtor was in Substantial Default.**

19.    The Debtor's President provided a letter to the City dated June 18, 2007 (the "6.18.07 Letter") in an attempt to renew and extend the Term of the Lease for an additional 10 years.  The Debtor attempted to renew and extend the Term of the Lease while the Debtor was in substantial and material default of the terms, conditions and provisions of the Lease.

20.    On June 18, 2007 (the "Petition Date") the Debtor, as Debtor, commenced its Bankruptcy Case by filing its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business and manage its alleged property as debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

7

**J.** **Post-Petition Matters Relating to the Lease**

    **(i)  Lease Litigation.**

    21.    On or about July 13, 2007, Debtor filed a declaratory judgment action regarding the status of the Lease denominated as *Akron Thermal, a Limited Partnership v. City of Akron, Ohio*, United States Bankruptcy Court, Northern District of Ohio, Eastern Division, Adv. Pro. No. 07-5138 (the "Lease Litigation").  On September 7, 2007, Debtor filed its First Amended Complaint. On August 13, 2007, the City filed its initial Answer, Affirmative Defenses and Counterclaims, which was subsequently amended on October 2, 2007, collectively referred to as "Amended Counterclaims".

    **(ii)** **Debtor Filed Its Assumption Motions.**

    22.    On August 24, 2007, Debtor filed its Motion of Debtor, and Debtor-in-Possession, pursuant to Section 365(d)(4) of the Bankruptcy Code, for an Order Extending the Period to Assume the Lease with the City of Akron ("Motion to Extend").  On September 6, 2007, the City filed its Objection to the Debtor's Motion to Extend.  On September 12, 2007, the Bankruptcy Court entered its Order Denying Motion to Extend Time to Assume Lease, wherein the Debtor was directed to file Assumption Motions by October 16, 2007.

    23.    On October 15 and 16, 2007, respectively, the Debtor filed its Assumption Motions.

**K.** **The City Filed An Objection To The Debtor's Assumption Motions Asserting, Among Other Things, That The Debtor Failed To Extend The Lease Term.**

    24.    On November 15, 2007, the City filed an Objection of City of Akron To Motions of Debtor And Debtor-In-Possession For Approval of Assumption of The Operating Lease Agreement With The City of Akron; Any And All License Agreements; And Franchise Ordinance [Docket No.232] (collectively hereinafter referred to as the "Objection").

25.     The City asserted , in the alternative, that to the extent the Lease was not terminated prior to the Debtor's attempt to extend/renew the Lease Term, the Lease expired under its own terms on August 15, 2007 because the Debtor's attempt to renew and extend the Lease Term was unenforceable, void and ineffective because the Debtor was in substantial and material default of the Lease, and therefore as of August 15, 2007, the Lease expired and could not be property of the bankruptcy estate, nor assumable by the Debtor under Section 365 of the Bankruptcy Code.

**L.**     **The City Cited Internal Substantive Law of The State of Ohio Stating That The Debtor's Belated Attempt To Exercise A Right To Extend The Lease Term Was Unenforceable And Void Because The Debtor Was In Substantial Default of The Lease.**

26.     Section 29 of the Lease provides as follows:

> "[t]his Lease shall in all respects be interpreted, construed, and governed by and in accordance with the internal substantive law of the State of Ohio." (emphasis supplied)

27.     The City argued Ohio Appellate law concluding that if the Lease was not terminated, the Debtor's belated attempt to exercise an alleged right to renew/extend was unenforceable and invalid because the Debtor was in substantial default.  It is implicit that the Debtor be in compliance with the Lease terms in order to assert an option to renew/extend. It does not matter whether the condition of compliance is expressed or implied in holding that a lessee's default may be asserted by the lessor to extinguish an option to renew.  *Horn v. LaPille*, 984 WL 6969 * 4 (Ohio App. 1 Dist. 1984).  The reason for this rule is that it is "fundamentally unfair to require a landlord to renew a lease when rental payments are uncertain."  *Id.* (citing *Hindquarter Corp. v. Property Development Corp.*, 631 P.2d 923, 926 (1981)).

28.     A forfeiture of the term promptly asserted by the lessor or a rightful reentry terminating the lease will operate to defeat the lessee's privilege to renew.  *Urbanski v.*

9

*Szelaszkiewicz*, 15 Ohio App. 4, (6th Dist. Lucas County 1921).  Substantially similar to options to renew/extend lease terms are options to purchase commercial real estate.  Conditions precedent to the exercise of a purchase option may be implied from the terms of the lease as a whole.  *Parry's Heirs v. Tobacco Ins. Co.,* 1871 WL 4609 (Superior Court Ohio 1871).  The Court in the *Parry* Case concluded "[h]e cannot, after default…apply to the chancellor for relief.  A breach of a covenant, which is a condition precedent to a claim…cannot be disregarded when equity is invoked by him who is in default.  He must do equity before he can ask it." *Id.* at \*3.  The Court held that the payment of rent and taxes was a "condition precedent" on the lessee's part to exercise an option to purchase. *Id. at \*1.*  Therefore, the City argued that the Lease expired on August 15,2007 and was not assumable by the Debtor, nor bankruptcy estate property.

29.     The Debtor cited the *Cook* Case and *Revco* Case for the proposition that a debtor can renew and extend the term of a lease, even while in default.  Assumption Motions, p. 17 ¶57 (citing *In re Revco D.S., Inc*., 111 B. R. 626 (Bankr. N.D. Ohio (1989); *In re Cook United, Inc.,* 53 . R. 342 (Bankr. N. D. Ohio 1985)). First and foremost, the *Cook* case and *Revco* case are not substantive law of the State of Ohio, but rather, bankruptcy court decisions.  A closer reading of the *Cook* Case and *Revco* Case reveal Debtor's attempt to distort these cases to suit its purpose. Both the *Cook* Case and *Revco* Case dealt with the debtors' attempts to exercise options to renew (a condition of which was curing defaults) <u>subsequent</u> to filing the bankruptcy petition and <u>prior</u> to assuming the leases at issue.  In those cases the issue was whether the debtor could exercise an option to renew post-petition without assuming the same and without curing the defaults as otherwise required by the respective leases.  *Cook,* 53 B. R. at 344; *Revco,* 111 B. R. at 629.  In other words, the issue in these cases was whether the debtors where required to assume the

respective leases and therefore cure the defaults prior to exercising an option to extend them when cure of default was a condition of extension. Essentially the bankruptcy courts in these two cases were deciding the priority between the written lease agreements providing for cure of default before an option to renew could be exercised and requiring cure of defaults in the event the lessor moved for an order requiring debtor to assume or reject. The cases reach different results in that the landlord in the *Cook* Case moved for the debtor to assume or reject the lease while the landlord in the *Revco* Case did not. Such is not the issue in the case at bar because the Debtor attempted to extend the lease pre-petition. Moreover, there is no discussion in either the *Cook* Case or the *Revco* Case of Ohio law regarding an effective exercise of an option to renew or extend a commercial lease; therefore, either case cannot be cited in support of the Debtor's proposition.

M.     **Evidentiary Hearings Were Convened Before The Bankruptcy Court On The Issues of Lease Termination And Extension On January 14 and 15, 2008.**

30.     The Debtor's Assumption Motions and the City's Objection were scheduled for evidentiary hearings on January 14 and 15, 2008. Prior to the January 14-15 Hearings, the parties entered into Stipulated Findings of Fact And Conclusions of Law With Respect To Issues At The Hearing on January 14-15, 2008 which were filed on January 12,2008 [Docket No. 289]. The Debtor stipulated that "[t]he Debtor owes the City $986,891.37 for pre-Petition Date rent under § 3.1 of the Lease." The Debtor further stipulated that it owed the City $93,035.37 for pre-Petition Date annual franchise fees under  § 3.2(a) of the Lease. Lastly, the Debtor stipulated that it owed pre-Petition Date personal property taxes under § 3.2 of the Lease.

31.     The Debtor and City entered into a stipulation stating that "[t]he Lease provides, in § 29, that 'in all respects' the Lease shall 'be interpreted, construed, and governed by and in

accordance with the internal substantive law of the State of Ohio,' such that Ohio law applies to the Lease."

32.     In order to provide administrative manageability of the presentation of the issues to the Bankruptcy Court, the Debtor and City agreed to a bifurcation of issues.  Evidentiary hearings on the issues of Lease termination and extension were convened before the Bankruptcy Court on January 14 and 15, 2008 (the "January 14-15 Hearings").

**N.**     **On January 31, 2008 The Bankruptcy Court Delivered An Oral Ruling Finding The Lease Had Not Been Terminated, Deferring To Further Determination The Extension Issue.**

33.     On January 31, 2008, the Debtor and the City were before the Bankruptcy Court on further evidentiary matters when the Bankruptcy Court entered an Oral Ruling on the Lease termination issue (the "1.31.08 Oral Ruling").  The Bankruptcy Court's 1.31.08 Oral Ruling concluded that the Lease had not been terminated prior to the Petition Date.  However, the Bankruptcy Court deferred its decision on the Lease extension issue stating that it raised an issue of Ohio Law that had not been addressed in any controlling Ohio State Supreme Court decisions; therefore, the Bankruptcy Court reserved, for further determination, the Lease extension issue. The Bankruptcy Court disregarded substantive appellate jurisprudence of the State of Ohio because it considered the opinions not to be controlling although Section 29 of the Lease requires the Bankruptcy Court to interpret the Lease according to the substantive law of the State of Ohio.

**O.**     **The Debtor Filed a Chapter 11 Plan on March 20, 2008 Identifying as a "Condition Precedent" The Entrance of a Bankruptcy Court Order Approving the Debtor's Assumption Motions and Determining that the Lease was Validly Extended.**

34.     On March 20, 2008, the Debtor filed its Plan of Reorganization for Akron Thermal, Limited Partnership (the "Chapter 11 Plan").  [Docket No. 366].  Pursuant to Article XII, entitled, "Conditions Precedent" the Debtor provided as follows:

"…the following are conditions precedent to the Effective Date of the [Chapter 11] Plan:

(b)     The Bankruptcy Court has entered an Order or Orders approving Debtor's assumption of the Lease; determining that the Lease was validly extended by the Debtor…."  Chapter 11 Plan, p. 25, Article XII, §12.1(b).

The validity of the Lease extension is a pivotal condition within the Debtor's Chapter 11 Plan.

The confirmation of Debtor's Chapter 11 Plan has not been scheduled for hearing as of the date

of filing this Motion for Leave.

**P.     On April 25, 2008 The Bankruptcy Court Rendered A Partial Opinion Supporting The Debtor's Position That The Lease Term Had Been Extended Despite Being In Substantial Default.**

35.     On April 25, 2008, the Bankruptcy Court entered its 4.25.08 Partial Opinion.  The

Bankruptcy Court reiterated its position that it did not consider the City's appellate Ohio

opinions to be controlling "[n]or has the Court found any other opinions of Ohio courts

addressing the question whether to imply substantial performance as a condition precedent to an

extension of the lease term." 4.25.08 Partial Opinion, p. 28.  The Bankruptcy Court concluded as

follows:

"The Court believes if the Supreme Court of Ohio were presented with the questions whether Akron Thermal effectively extended the lease on June 18, 2008…it would resolve the issue in favor of Akron Thermal." 4.25.08 Partial Opinion, p. 28.

In its 4.25.08 Partial Opinion, the Bankruptcy Court concluded that the Debtor was in default of

Lease rental payments, franchise fees , real estate taxes and for the failure to credit the City for

prepaid steam pursuant to the Lease Amendments I and II . 4.25.08 Partial Opinion, pp.7-10;

pp.34-36.

36.     The Bankruptcy Court alternatively concluded that the Debtor extended the term of the Lease when it filed the Lease Litigation.  4.25.08 Partial Opinion, pp. 32-33.  The Bankruptcy Court alternatively held as follows:

> "…the Court concludes, as an alternate holding, that even if Akron Thermal did not effectively extend the Lease term prior to filing its Chapter 11 petition, it did affect such an extension by filing the Lease Adversary Action."  4.25.08 Partial Opinion, p. 33.

In this instance, the Bankruptcy Court interjected the Lease Litigation as notice that the Debtor was seeking to preserve its Lease extension rights and its option to assume the Lease, although, the Lease Litigation was filed approximately a month after the effective date in which the Debtor was to leave the Leased Property.  In this instance the Bankruptcy Court's 4.25.08 Partial Opinion does not cite any Ohio, or any other state, federal case or statutory law, to support such a conclusion.  The Bankruptcy Court attempts to interject an analysis under Section 365 of the Bankruptcy Code which is prohibited by Section 29 of the Lease and the stipulation of the parties stating that the Lease "shall in all respects" be interpreted, construed and governed by and in accordance with internal substantive law of the State of Ohio.

### III.     STATEMENT OF QUESTIONS AND RELIEF SOUGHT

37.     For the reasons discussed below as to the Lease extension issue, the following issues require and immediate appeal to this District Court:

(i)     Whether the Bankruptcy Court erred by failing to interpret the Lease extension issue in accordance with Section 29 of the Lease entitled, "Governing Law" and in accordance with the substantive internal appellate opinions of the State of Ohio; and

14

(ii)     Whether, as a matter of law, the Bankruptcy Court erred in failing to conclude that it is implicit in a commercial lease that a tenant be in compliance with the lease terms in order to exercise an option to extend; and

(iii)    Whether, as a matter of law, the Bankruptcy Court erred in alternatively holding, that even if the Debtor did not effectively extend the Lease term, prior to filing its Chapter 11 Petition, it did effect such an extension by filing the Lease Litigation.

38.     On appeal, the City seeks reversal of the Bankruptcy Court's 4.25.08 Partial Opinion as follows:

(a)     Reversal of the Bankruptcy Court's failing to interpret the Lease extension issue in accordance with Section 29 of the Lease and in accordance with the substantive internal appellate opinions of the State of Ohio; and

(b)     Reversal of the Bankruptcy Court's 4.25.08 Partial Opinion failing to conclude that it is implicit in a commercial lease that a tenant be in compliance with the lease terms in order to exercise an option to extend; and.

(c)     Reversal of the Bankruptcy Court's alternate holding within its 4.25.08 Partial Opinion, for concluding in error, that even if the Debtor did not effectively extend the Lease term prior to filing its Chapter 11 Petition, it did effect such an extension by filing the Lease Litigation.

## IV.     STANDARD FOR LEAVE TO APPEAL[1]

39.     Under 28 USC §158(a)(3), district courts have jurisdiction to hear appeals from interlocutory orders and to decrees of a bankruptcy judge.  *Enron Corp. v. Springfield Assoc., L.L.C.*, 2006 WL 2548592, *3 (S.D. N. Y., 2006) (granting motion for leave to appeal).  In such

---

[1] Any unreported opinions referenced herein are collectively attached hereto as Exhibit "B" and alphabetically ordered.

instances, the district court, adopting a standard of the United States Court of Appeals for the

Sixth Circuit, ("Sixth Circuit Court"), for non final appeals "may permit an appeal to be taken

from an order certified for an interlocutory appeal if (1) the order involves a controlling question

of law; (2) a substantial ground for difference of opinion exists regarding the correctness of the

decision; and (3) an immediate appeal may materially advance the ultimate termination of the

litigation."  *In re: A.P. Liquidating Co.*, 350 B.R. 752, 755 (E. D. Mich., 2006); *In re City of*

*Memphis*, 293 F. 3d 345, 350 (6th Cir. 2002).

      40.      In the Bankruptcy context, district courts have applied a standard for interlocutory

appeal with greater flexibility.  *In re: Orange Boat Sales*, 239 B.R. 471, 474 (S. D. N. Y., 1999);

*Mishikin v. Ageloff*, 220 B. R. 784, 791 (S. D. N. Y., 1998) ("A flexible approach to the concept

of finality in the bankruptcy context supports a similarly flexible approach to the standard for

granting interlocutory appeals from interlocutory orders of a bankruptcy court."); *Williams v.*

*United States*, 215 B. R. 298 N. 6 (D. R. I., 1997) ("Holding that Section 158(a)(3) vest broad

discretion in the district court to permit interlocutory appeals"). The Sixth Circuit Court takes a

relaxed view of "finality" for bankruptcy orders as compared with orders issued by the district

court.  *WCI Steel, Inc. v. Wilmington Trust Co.*, 338 BR 1, 8 (N.D.E.D. Ohio 2005) (citing  *In re*

*Dow Corning*, 86 Fed 3d 482, 488 (6th Cir 1996);  *In re Cottrell*, 876 F. 2 d 540, 541-42 (6th Cir.

1989); accord, *In re Urban Broadcasting re Olshan*, 356 F. 3d 1078, 1082-83 (9th Cir. 2002; F.

2d 1318, 1319 (7th Cir. 1991); *In re Saco Local Development Corp.*, 711 F. 2d 441, 444-446 (1st

Cir 1983)).  The final order requirement is considered "in a more pragmatic and less technical

way in bankruptcy cases than in other situations."  *Cortell*, 876 F. 2d at 541-42.  The reason for a

more relaxed rule of appealability in bankruptcy cases is that:

> "[b]ankruptcy cases frequently involved protracted proceedings
> with many parties participating.  To avoid the waste of time and resources

that might result from reviewing discrete portions of the action only after a plan of reorganization is approved, courts have permitted appellate review of orders that in other contexts might be considered interlocutory". *Dow Corning*, 86 F. 3d at 488 (quoting *A.H. Robins Co. v. Piccinin*, 788 F. 2d 994, 1004 (4th Cir. 1986) (internal quotations omitted).

41.     Under 28 USC §158(a)(3), "The district courts have jurisdiction to hear appeals from any interlocutory order of the bankruptcy court (with leave of the court)."  In contrast with appeals to the courts of appeals from interlocutory orders of the district courts, Congress did not impose any restrictions on interlocutory appeals from the bankruptcy courts to the district courts. As a matter of policy, however, the district courts have held that an interlocutory appeal should be permitted if the bankruptcy court's ruling (i) involves a controlling question of law; (ii) over which there is a substantial ground for difference of opinion; and (iii) an immediate appeal would materially advance the ultimate termination of the litigation. *A. P. Liquidating*, 350 B. R. at 755.

**A.      A Controlling Question of Law.**

42.     The first prong of the test requires a controlling issue law.  A legal issue can be deemed controlling "if it could materially affect the outcome of the case." *City of Memphis*, 293 F. 3d at 351; *In Re: Baker & Getty Fin. Servs., Inc. v. Nat'l Union Fire Ins. Co.*, 954 F. 2d 1169, 1172, F.N. 8 (6th Cir. 1992).  "Interlocutory appeals are intended 'for situations in which the Court of Appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts.'" *Sanderson Farms, Inc. v. Gasbarro*, 2007 WL 3402539, *3 (S. D. Ohio, 2007), quoting *In re: Pilch*, 2007 WL 1686308, at *4 (W.D. Mich., 2007).

43.     In the *Enron* case, the District Court found that a question is a controlling issue of law if "reversal of the bankruptcy court's order would terminate the action, or

[if]…determination of the issue on appeal would materially affect the litigation's outcome." *Enron*, 2006 WL 2548592, at *4.    A district court found a controlling issue of law and granted leave to appeal when it would have been "inefficient to have the parties proceed under the status quo and await a final order before this Court reviewed appellant's motion."  *Mirant Americas Energy Marketing, L.P. v. The Official Committee of Unsecured Creditors of Enron Corp.*, 2003 WL 22327118 at *2 (S. D. N. Y., 2003).  The controlling question of law "must refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record."  *Enron*, 2006 WL 2548592 at *4.

44.    In the case *sub judice*, the Bankruptcy Court grapples with the issue of whether the condition precedent that the Debtor not be in substantial, material default of the Lease at the time the Debtor attempted to exercise the option to extend the Lease term is implied in the Lease. Stated conversely, was the Debtor required to be in compliance with the Lease in order to effectively exercise an option to extend the same for an addition term?  The Bankruptcy Court acknowledged in its 1.31.08 Oral Ruling, that it was deferring its decision on this issue because it raises a question of Ohio Law that has not been addressed in any controlling Ohio Supreme Court decisions.  The Bankruptcy Court had conducted its own preliminary research of Ohio Law and found no controlling precedent that the lessee, who was in substantial and material default of the lease obligations, could not elect lease extension under a lease that was negotiated arms length, and on its face does not contain such a condition.  Nor did the Bankruptcy Court find any Ohio opinion holding that the implied condition of substantial performance should not be read into the lease agreement.  1.31.08 Oral Ruling.

45.    Again, in its 4.25.08 Partial Opinion, the Bankruptcy Court acknowledged that it does not consider the Ohio appellate case authority provided by the City to be controlling.

18

4.25.08 Partial Opinion, pp. 27-28.  The Bankruptcy Court stated that, "[n]or has the Court found

any other opinions of Ohio courts addressing the question whether to imply substantial

performance as a condition precedent to an extension of the lease term."  4.25.08 Partial

Opinion, p. 28.  However, the Bankruptcy Court makes an educated guess (without citation to

any authority) stating that if the Supreme Court of Ohio were presented with the question

whether the Debtor effectively extended the Lease on June 18, 2008, it would resolve the issue in

favor of the Debtor.  *Id.*

      46.     The issue as to whether or not the Debtor successfully extended the Lease term by

attempting to exercise the option on June 18, 2006 while in substantial and material default of

the Lease provides this District Court with a pure controlling question of law without the

necessity of delving into the record because the basic facts had been stipulated to by the parties.

The Debtor stipulated to the default amounts associated with the delinquent Lease payments,

franchise fees and personal property taxes prior to the January 14-15 Hearings. (See ¶¶30,31

above.)  A controlling question  of law exists because if the Debtor could not extend the Lease

while being in substantial and material default and the Bankruptcy Court's 4.25.08 Partial

Opinion is reversed, the Lease would have expired under its own provisions on August 15, 2007;

therefore, the Lease would be unassumable and not a part of the bankruptcy estate thereby

terminating the necessity of a Chapter 11 reorganization.  The District Court's ruling on this

issue would be controlling because it would significantly affect the conduct of the action.

Additionally, a controlling issue of law justifying the granting of a leave to appeal is appropriate

in the case *sub judice* because it would be inefficient to have the parties proceed in the Chapter

11 and await a final order at the confirmation stage.  The City presents a controlling question of

law issue whereby the District Court could decide it quickly and cleanly without having to study the record.

47.    This appeal presents discreet legal questions.  A bankruptcy court's conclusions of law are reviewed *de novo*.  *Adell v. John Richards Homes Buildg. Co.*, 439 F. 3d 248, 254 (6th Cir. 2006); *In re: Downs*, 103 F. 3d 472, 476-77 (6th Cir. 1996).  "*De Novo* review means that the appellant court determines the law independently of the trial court's determination."  *Treinish v. Northwest Bank Minn.*, N. A. 266 B. R. 651, 653 (6th Cir. BAP 2001).

**B.      A Substantial Ground for Difference of Opinion Exists.**

48.    The second prong of the test requires that there be a substantial ground for difference of opinion regarding the issue of law on appeal.  The controversy at hand amounts to an absence of law from the Supreme Court of Ohio and disagreement regarding the law among the courts outside of the State of Ohio requiring interlocutory review herein.  "The 'substantial ground for a difference of opinion must arise out of the genuine doubt as to whether the bankruptcy court applied the correct legal standard."  *Enron*, 2006 WL 2548592 at *4. Substantial ground for difference of opinion exists when there is conflicting authority on the legal issue presented or the issue is one of first impression.  *Id.; Lloyd's American Trust Funds Litig.,* 1997 WL 458739, at *5.

49.    "In order to demonstrate that there is substantial ground for a difference of opinion, defendants must show that 'the issue is difficult and a first impression involves more than just a strong disagreement among the parties.'"  *In re: Ionosphere Clubs, Inc.*, 1999 WL 717291 at *3 (S. D. N. Y., 1999) (quoting *In re: T. R. Acquisition Corp.*¸1997 WL 51500, at *2 (S. D. N. Y., 1997)).

50.     A substantial ground for difference of opinion exists because there are two camps of deciding the extension issue outside of the State of Ohio and it presents an issue of first impression in the State of Ohio.  Case law outside of the State of Ohio has held the tenant's nonperformance of covenants or conditions of a lease defeats a tenant's right of renewal or extension.

51.     There have been a number of cases wherein a tenant's right to extend or renew a lease were determined to be dependent by "implication" upon the tenant's performance of certain covenants or conditions in the Lease.  The Courts held that the nonperformance or breach of such covenants or conditions precluded the tenant's exercise of the option to renew or extend.  The Bankruptcy Court in the case *sub judice* was in a position to determine this issue, without any controlling authority from the Supreme Court of Ohio.

52.     When the Supreme Court of Washington was faced with the same issue, it held that the "chronic failure of [a] tenant to pay rent made its exercise of [an] option to renew [a] lease unenforceable against [the] landlord" and "prompt payment of rent was intended by [the] parties to be a condition precedent to renewal"  *Hindquarter Corporation v. Property Development Corporation,* 95 Wash. 2d 809 (1981).

53.     In the *Hindquarter* case, the tenant had numerous late payments and 14 checks returned for insufficient funds.  *Id.*  The original lease term in the *Hindquarter* case, was for a term of five (5) years with an option for two 5-year periods.  *Id.* at 810.  The tenant in the *Hindquarter* case, as here, attempted to exercise a second 5-year option.  *Id.*  The Trial Court in the *Hindquarter* case granted judgment in favor of the commercial landlord reasoning that "the Hindquarter's renewal right was implicitly and inherently dependent upon the timely payment of its rent." *Id.* at 811.  However, the Court of Appeals in the *Hindquarter* case reversed the Trial

21

Court, "holding that nothing in the lease indicated that the exercise of the option was dependent upon Hindquarter's payment of rent. It concluded that where the payment of rent is not an expressed condition precedent to the exercise of an option, rental arrearages will not deprive a lessee of any renewal right." *Id.*

54. The Supreme Court of Washington, in the *Hindquarter* case, reversed the Court of Appeals stating, "…[w]e conclude, after reviewing the entire lease and resorting to common sense, that Hindquarter's chronic failure to pay rent made its option unenforceable." *Id.* at 813. In reversing the Court of Appeals, the Supreme Court of Washington in the *Hindquarter* case relied on *Toellner v. McGinnis*, 55 Wash. 430 (1909). *Id.* In the *Toellner* case, the Supreme Court of Washington concluded:

> "Covenants in an agreement will be construed as conditions precedent or as independent agreements, according to the intention of the parties and the good sense of the case, and technical words must give way to such intention. Therefore, in determining how to class covenants, the safest and best course is to ascertain what was the intention of the parties from the instrument they have executed, and then to give the covenant such a construction as will carry this intention into effect. If it appears, on the whole, that any substantial part of the agreement on one side is to be performed only on condition of performance on the other, the court is bound to construe the covenants accordingly, whatever may be the order in which they are placed in the instrument or the manner in which they are expressed." *Hindquarter* 95 Wash. 2d at 813 citing *Toellner* 55 Wash. At 437.

55. In the *Hindquarter* case, one of the tenant's affirmative covenants was that the tenant would promptly pay the rent when due. *Id.* The tenant in the *Hindquarter* case, as here, breached the covenant to pay lease payments with such frequency that the landlord could have concluded that the tenant "would not or perhaps could not comply with the rental conditions." *Id.* The Supreme Court of Washington reasoned, "[t]he lessee's pattern of conduct indicated, at the time of the attempted renewal, that it was in effect not agreeing to the terms of the

option….[the lessor] was thus entitled to deny the renewal."  (citations omitted) *Id* at 814.  The

Supreme Court for the State of Washington concluded, "…the payment of rent is an implied

condition for any lease renewal."  (Citations omitted) *Id* at 814.  The Supreme Court for the State

of Washington relied on a case in California of *Nork v. Pacific Coast Medical Enterprises, Inc.*,

73 Cal. App. 3d 410 (1977).  The Supreme Court for the State of Washington, as in the case *sub*

*judice,* noted that the tenant in the *Nork* case argued that its option to renew was an independent

covenant and that it would exercise that option even though it had defaulted on its rental

payments because the lease did not expressly state otherwise.  *Id.*  The Supreme Court of the

State of Washington noted that the Supreme Court of California rejected this argument by the

tenant, stating that, "payment of rent is an implied condition which must be satisfied in addition

to other express covenants in the lease before the option can be exercised…." *Hindquarter* 95

Wash. 2d 814 (quoting *Nork*, 73 Cal. App. 3d at 416).

     56.    The Supreme Court for the State of Washington concluded,

> "We agree with the rule followed in California, for it would
> be fundamentally unfair to require a landlord to renew a lease when
> rental payments are uncertain.  The primary consideration for any
> lease is the rent to be paid and its nonpayment substantially
> undermines the basis for the agreement…."  *Id* at 815.  (Citing
> *Gadsden Bowling Center, Inc. v. Frank*, 249 Ala. 435, (1947).

     57.    The Supreme Court for the State of Washington additionally concluded, "[i]t

would be inequitable or improper to require a landlord to extend the lease when the tenant was

provided to be an undesirable tenant and has violated covenants contained in the lease for the

protection of the landlord."  *Id.* at 815.

     58.    The court in *Felder v. Hall Bros. Co.*, 151 Ark. 182 (1921) held that with regard

to a covenant to keep a farm premises in repair, it would be fair to assume that the parties

contemplated there would be no default in that respect if the lessee sought to renew the lease, and

that they would not seek to exercise the right to renew if they failed to keep their covenant to maintain the repairs, so that if the trial court determined that the premises had not been kept in repair, the lessee would not be entitled to renew the lease.  A court in *Lutterloh v. Patterson*, 211 Ark. 814 (1947), held that the lessee would not be entitled to exercise his right to renew the lease term if he were actually in breach of covenants contained therein, and that, therefore, testimony should have been taken as to whether the lessee had breached certain covenants in the lease.  A court in *Behrman v. Barto,* 54 Cal. 131 (1880) held that the payment of rent, taxes and assessments as they became due was a condition precedent to the exercise of a tenant's right of renewal pursuant to the terms of the lease under which the tenant was in possession of the premises.  The Court in the *Klepper* case declaring the rights of the various parties under a lease, stated that the right to exercise an option depends upon the payment of rent when due and the compliance of the lessee with other covenants of the lease so that performance of the covenants is impliedly a condition precedent to the right of renewal or extension.  *Klepper v. Hoover,* 21 Cal. App. 2d at 460 (5th Distr. 1971).  Additionally, reversing a judgment of an appellate court in favor of a tenant, the court in *Brown v Hoffman* 628 P 2d 617 (Colo. 1981) held that the tenant's right to renew their lease was dependent upon their compliance with the covenants and agreements contained in the lease, and although the grant of the option contained no specific or expressed language making its exercise dependent upon the payment of rent or the performance of other covenants of the lease, it was clear from the language of the lease that it was the intention of the parties to make the right to renew subject to the tenant's performance.

59.    For a collection of state and federal cases wherein the courts determined whether a tenant's nonperformance of covenants or conditions in a lease will defeat the tenant's right of renewal or extension, see 23 A.L.R. 4th 897 §§ 4, 5, 6 (1983).

24

60.      In its 4.25.08 Partial Opinion, the Bankruptcy Court acknowledged that it considered the opinions cited by the City from jurisdictions other than Ohio.  4.25.08 Partial Opinion, p. 30.  The Bankruptcy Court cites the countervailing position of those courts outside the State of Ohio concluding:

> "And where there are independent covenants for renewal or extension, many courts have held that tenant defaults under other lease covenants do not bar exercise of the renewal right." 4.25.08 Partial Opinion, p. 30 (citing by way of an example *Darling Shop of Birmingham, Inc. v. Nelson Realty Co., Inc.,* 255 Ala. 586, 591 (1951); *Parham v. Glass Club Lake, Inc.,* 533 S. W. 2d 96, 99 (Tex. 1976) see generally right to exercise option to renew or extend lease as affected by tenants breach of other covenants or conditions, 23 A. L. R. 4th 908 §2).*Id.*

61.      Therefore, being that the issue is one of first impression with the State of Ohio, and there is a substantial difference of opinion existing among the state jurisdictions other than Ohio, the second prong exists wherein the District Court has jurisdiction to hear this appeal of the 4.25.08 Partial Opinion.

**C.      The Advance of the Ultimate Termination of the Litigation.**

62.      Finally, the third prong requires a showing that an immediate appeal would materially advance the ultimate termination of the litigation.  The extension of the Lease term is a major condition of the Debtor's Chapter 11 plan, the feasibility of which has yet to be determined.  The Bankruptcy Court has melded the last element of Debtor's Assumption Motions into the confirmation process which could take months to resolve, including the possibility of numerous confirmation hearings.  This would delay the appealability of the 4.25.08 Partial Opinion fro months until the confirmation process is final.  An interlocutory appeal of the extension issue, if the Bankruptcy Court were reversed, would advance the ultimate termination of the Chapter 11 case because the Lease would have expired as of August 15, 2007, and would no longer be an asset of the bankruptcy estate. Therefore, an interlocutory review of the

25

extension issue would materially advance the ultimate termination of the Debtor's Chapter 11 case.

### V.     APPLICATION OF THE STANDARD FOR LEAVE TO APPEAL

63.     The City has met the test required for the extension issue to be reviewed by this District Court although the issue was determined as a result of the interlocutory order of 4.25.08 Partial Opinion.  The City's Motion for Leave presents pure controlling questions of law that will materially affect the outcome of the Debtor's Chapter 11 case and as to which there is substantial ground for difference of opinion.  Being that the Debtor and City stipulated to some of the Lease default amounts, this District Court need not study any facts in the record in order to determine:

(i)     Whether the Bankruptcy Court erred by failing to interpret the Lease extension issue in accordance with Section 29 of the Lease entitled, "Governing Law" and in accordance with the substantive internal appellate opinions of the State of Ohio; and

(ii)    Whether, as a matter of law, the Bankruptcy Court erred in failing to conclude that it is implicit in a commercial lease that a tenant be in compliance with the lease terms in order to exercise an option to extend; and

(iii)   Whether, as a matter of law, the Bankruptcy Court erred in alternatively holding, that even if the Debtor did not effectively extend the Lease term, prior to filing its Chapter 11 Petition, it did effect such an extension by filing the Lease Litigation.

64.     The City's Motion for Leave should be granted because there is substantial ground for difference of opinion regarding the issue of law on appeal.  The legal issues presented by this appeal relate to the diversion authorities (outside the State of Ohio) as to whether or not an attempt to renew and extend a lease term is enforceable when the tenant is in substantial and

material default of the Lease.  The Bankruptcy Court's 4.25.08 Partial Opinion as it concerns the

Lease extension issue is based on a set of case authorities other than the State of Ohio.  As

discussed at length above, the Bankruptcy Court itself has noted and acknowledged that there is a

lack of controlling authority from the Ohio Supreme Court and infers that this is an issue of first

impression.

## VI.     CONCLUSION

65.        For all the foregoing reasons, the City respectfully requests that the District

Court conclude that the interlocutory appeal is appropriate to address controlling questions of

law as to which there is substantial disagreement, and that this Chapter 11 litigation will be

advanced materially by an interlocutory appellate adjudication of the issue of the Bankruptcy

Court's 4.25.08 Partial Opinion granting an extension of a Lease term exercised at the time the

Debtor was in substantial and material default.


Dated: May 5, 2008                 SKIDMORE & ASSOCIATES CO., LPA


                                   By:      /s/ Eric E. Skidmore                  _____
                                            Eric E. Skidmore (#0042310)
                                            Brian K. Skidmore (#0012833)
                                            Archie W. Skidmore (#5037)
                                            One Cascade Plaza – 12th Floor
                                            Akron, OH   44308-1136
                                            Telephone:  330-253-1550
                                            Facsimile:  330-253-9657
                                            ees@skidmorelaw.com
                                            bks@skidmorelaw.com
                                            aws@skidmorelaw.com

                                            *Attorneys for City of Akron*

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 5th day of May 2008, the foregoing *Memorandum In Support of The Motion of The City of Akron For Leave To Appeal Bankruptcy Court's Partial Opinion On Motion of Debtor And Debtor-In-Possession For Approval of Assumption of The Unexpired Operating Lease Agreement With The City of Akron Dated April 25,2008* was filed with the Court via the ECF system and was served by the ECF system, electronic mail and by first class U.S. mail, postage pre-paid upon the parties set forth on the attached  Service List .

/s/ Eric E. Skidmore_____
Eric E. Skidmore  (#0042310)

## <u>SERVICE LIST</u>

Daniel R. Swetnam, Esq.
Tyson A. Crist, Esq.
250  West St
Columbus,  OH   43215
Telephone: 614-462-2700
Facsimile:  614-224-3568
Email: <u>dswetnam@szd.com</u>
       <u>tcrist@szd.com</u>
*Counsel for Debtor and Debtor-In-Possession*

Joseph F. Hutchinson, Esq.
Kelly S. Burgan, Esq.
BAKER & HOSTETLER, LLP
3200  National City Center
1900  E  Ninth St
Cleveland,  OH   44114-3485
Telephone:  216-621-0200
Facsimile:  216-696-0740
Email  <u>jhutchinson@bakerlaw.com</u>
      <u>kburgan@bakerlaw.com</u>
*Counsel for the Committee of Unsecured
Creditors*

Office of the U.S. Trustee
Attn:  Lenore Kleinman
Howard M. Metzenbaum U.S. Courthouse
201 Superior Ave  E  - Suite 441
Cleveland,  OH   44114
Telephone:  216-522-7800
Facsimile:  216-522-7193
Email:  <u>Lenore.Kleinman@usdoj.gov</u>

1